UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

)
In re )
)    Chapter 11
SWISSBAKERS, INC., )    Case No. 22-10357-JEB
)
          Debtor )
)

## DECLARATION OF NICOLAS STOHR IN SUPPORT OF MOTIONS FOR USE OF CASH COLLATERAL AND FOR AUTHORITY TO PAY PREPETITION WAGES

I, Nicolas Stohr, depose and state as follows:

1.    I am the Chief Executive Office of Swissbakers, Inc. (the "Debtor") and make this Declaration on personal knowledge, except as may otherwise be stated herein. If called to testify at the hearing on March 23, 2022 I would testify as follows:

### BACKGROUND

2.    I have worked at the Debtor on and off since its inception and have occupied the position of Chief Executive Officer since September 2019.

3.    In 2006, my parents, Thomas and Helene Stohr started a European-style bakery business out of their home in Reading, Massachusetts. Initially, the business, styled swissbäkers, focused on wholesale, farmer's markets, and catering. In 2009, they opened their first swissbäkers retail location in the Reading Train Station and moved their bakery to the basement of the Reading Train Depot. In 2013, after being approached by Harvard to open a bakery on its campus, they expanded the Debtor's business to Allston, moving the bakery from the Reading Train Depot to the Allston location.

4.    Subsequently, three additional locations – at the Boston Public Market, North Station and Harvard Square – were opened. With the expansion, first to Allston and then the other

locations, the Debtor borrowed more than $3 million from various individuals. The expansion occurred too quickly and by 2019 the Debtor found it difficult to keep up with its obligations.

5. After a temporary shutdown in December of 2019, an advisory board was put together and a plan to fix the business was put into place. Three months later, during the midst of lease negotiations with Harvard, COVID-19 was declared an international pandemic. The pandemic worsened the Debtor's financial situation. As occurred with all restaurants, the Debtor was forced to limit its business to take-out and a substantially reduced customer base, leaving the Debtor with next to no revenue.

6. Only through sheer determination of my parents and myself has the Debtor survived the pandemic. The business did not receive round 1 or round 2 PPP or Small Business Relief Funds. All employees were laid off and for many months the business was operated entirely by my parents and me, for a long time without any pay.

7. The business is now operating profitably at its Allston and Reading locations (the other three locations having been closed). In addition to its retail bakery and café, the Debtor also has a wholesale and catering operation, but on a smaller scale than had existed previously.

8. Because it is unable to pay the large amount of debt that has accumulated it commenced these Chapter 11 proceedings.

MOTION TO USE CASH COLLATERAL

9. The Debtor's assets are subject to the following liens in the order of priority listed:

a. Salem Five Cents Savings Bank ("Salem Five") holds a first priority security interest in all of the Debtor's assets to secure an outstanding obligation in the amount

of $113,111.63. The indebtedness to Salem Five is subject to a personal guaranty of Thomas Stohr and Helene Stohr secured by a mortgage on their residence.

      b.      The Internal Revenue Service ("IRS") has a tax lien on the Debtor's assets. The total indebtedness to IRS is $180,784.15. It is believed that most, but not all, of the IRS tax lien is in second position.

      c.      Thomas Leach holds a third priority security interest in all of the Debtor's assets to secure an outstanding obligation in the amount of $45,000.00

      d.      US Foods, Inc. has filed a UCC-1 financing statement with the Massachusetts Secretary of State, claiming a security interest in all of the Debtor's assets. The Debtor has no recollection of having signed a security agreement with US Foods. US Foods is owed $27,920.35.

      e.      The Massachusetts Department of Revenue ("Mass. DOR") has a tax lien on the Debtor's assets. The total amount due Mass. DOR is $71,266.19.

10.      The Debtor's assets are worth between $143,000 and $168,000, consisting of the following:

      a.      Cash in the amount of $7,355.

      b.      Accounts receivable in the face amount of $2,515.

      c.      Inventory with a book value of $8,393.

      d.      Equipment consisting of commercial ovens, proofer, mixer, dough divider and sheeters, as well as commercial tables shelving and small ware. The original cost of the equipment was $873,600 but, after depreciation, it has a book value of $17,000. While the equipment has not been appraised, based on my knowledge of used restaurant equipment, I believe that it is worth in the $125,000 to $150,000 range. Whatever the value of the

equipment, it is well maintained and insured and unlikely to depreciate in value during these Chapter 11 proceedings.

11. It is likely that in a liquidation the total value of the Debtor's assets is less than the amount owed to Salem Five.

12. Prior to the commencement of this case, the Debtor had entered into payment agreements with Salem Five, IRS and Mass. DOR to pay each as follows:

   a. $2,316.42 per month to Salem Five.

   b. $1,000.00 per month to IRS.

   c. $1,000.00 per month to Mass. DOR.

The Debtor proposes that it continue to make these payments to Salem Five and to IRS on account of their secured claims. Because Mass. DOR's claim is unsecured, the Debtor will not be making payments on this claim at this time but intends to resume them in connection with a plan of reorganization, which it expects to file within the next 30 days.

13. The Debtor otherwise proposes as adequate protection that the secured creditors be granted a replacement lien on all post-petition assets to the extent of the diminution in value of their collateral to attach in the same order of priority as currently exists.

14. Attached hereto as <u>Exhibit A</u> is the Debtor's projections over the next four weeks. These projections are conservative as to revenue numbers, as I expect that it is likely that the Debtor will exceed the revenue projections. With an increase in revenue, there will also be a concomitant increase in cost of goods sold, which is projected roughly at $5,000 for every $17,500 in sales. Asset values – specifically cash, accounts receivable and inventory – are expected to remain even or increase slightly during this period while at the same time the payments to Salem Five and IRS described in paragraph 12 above are made.

15. Without the use of cash collateral, the Debtor will not be able to operate and will be forced into a liquidation.

## PAYMENT OF PREPETITION WAGES

16. By its Motion for Authority to Pay Prepetition Wages, the Debtor seeks authority to pay $7,781.58 of gross wages to 12 employees for work performed by these employees for the period from March 7, 2022 to the petition date, ranging from $96.75 to $1,307.67.

17. Attached hereto as Exhibit B is a list of wages to be paid. Employees marked with an asterisk are insiders, which includes Thomas Stohr, Helene Stohr, Tobias Stohr and myself.

18. The employees are an essential part of our business and the timely payment of their wages is critical to the business's success.

19. All of the wages sought to be paid are for the current pay period and they all otherwise qualify for priority treatment pursuant to section 507(a)(4) of the Bankruptcy Code.

Signed under the pains and penalties of perjury this 22nd day of March, 2022.

*Nicolas Stohr*
Nicolas Stohr

3097416_1

# Exhibit A

**EXHIBIT A**

swissbäkers, Inc.
Cash Forecast

| Week End | 27-Mar | 3-Apr | 10-Apr | 17-Apr |
|---|---|---|---|---|
| Beginning Cash | 7,355 | 6,778 | 4,549 | 3,472 |
| Sales | 17,500 | 17,500 | 17,500 | 17,500 |
| Total Sources | 24,855 | 24,278 | 22,049 | 20,972 |
| Cash Uses: | | | | |
| Accounts Payable | | | | |
| Note Payment | | | | 2,316 |
| CGS Purchases | 5,000 | 5,000 | 5,000 | 5,000 |
| Payroll | 10,000 | | 10,000 | |
| Operating Expenses | 3,077 | 3,077 | 3,577 | 4,577 |
| Rent | | 10,652 | | |
| IRS | | 1,000 | | |
| Total Uses | 18,077 | 19,729 | 18,577 | 11,893 |
| Ending Cash | 6,778 | 4,549 | 3,472 | 9,079 |

# Exhibit B

# EXHIBIT B

## WAGES TO BE PAID

The employees listed below with an asterisk are insiders:

| Employee No. | Amount |
|---|---|
| 1* | $ 96.75 |
| 2 | $ 116.55 |
| 3 | $ 117.60 |
| 4 | $ 189.30 |
| 5 | $ 227.40 |
| 6 | $ 457.38 |
| 7 | $ 829.95 |
| 8 | $ 893.40 |
| 9 | $ 948.24 |
| 10* | $1,301.67 |
| 11* | $1,301.67 |
| 12* | $1,301.67 |

3097416_1